IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRANK VEGA, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>VECELLIO & GROGAN, INC., )<br>    Defendant. ) | Case No. 7:20-cv-00130<br><br>By:   Michael F. Urbanski<br>Chief United States District Judge |

## **MEMORANDUM OPINION**

This matter comes before the court on defendant Vecellio & Grogan, Inc.'s ("V&G") motion to dismiss Counts Three and Four of plaintiff Frank Vega's nine-count complaint. Mot. to Dismiss, ECF No. 8. In Count Three, Vega alleges that V&G discriminated against him because of his national origin in violation of Title VII of the Civil Rights Act of 1964. Compl., ECF No. 1 at ¶¶ 97–107. In Count Four, Vega alleges that V&G retaliated against him for complaining about national origin discrimination. Id. at ¶¶ 108–22. Vega also alleges in Counts One and Two that V&G discriminated against him because of his race and retaliated against him for complaining about race discrimination, also in violation of Title VII. Id. at ¶¶ 71–96. Vega opposes V&G's motion to dismiss, ECF No. 17, and V&G has filed a reply, ECF No. 18. The matter is fully briefed and ripe for resolution. For the reasons articulated herein, the court will **DENY in part** the motion to dismiss as to Count Three, as it is sufficiently pled, and the court will **GRANT in part** the motion to dismiss as to Count Four, as it is duplicative of Count Two.

## I.

Vega is a 59-year-old Latino man of Puerto Rican descent. ECF No. 1 at ¶ 5. V&G hired Vega as a carpenter in March of 2018 and fired him in January of 2019. Id. at ¶ 7.

Two months into his new job, Vega says he began to witness and experience discriminatory behavior by his V&G co-workers. On or about May 31, 2018, a co-worker used a racial epithet, n****r, in conversation. Id. at ¶ 12. The co-worker, along with a supervisor standing nearby, dismissed the use of the epithet as just another term for an ignorant person. Id. at ¶ 14. An African American co-worker, Wally Smith, stood by quietly during the conversation, but separately told Vega that the same Caucasian co-worker had previously invoked a racial stereotype by telling him to "go get . . . some watermelon because that's what y'all like to eat.". Id. at ¶ 15.

Vega contacted V&G's vice president, Robert Colozzo, and the Human Resources Department ("HR") to express his concerns about the incident. Id. at ¶¶ 16–18. Vega provided HR with a signed narrative. Id. at ¶ 19. A week later, a supervisor, Mike Melton, held a meeting about using racial epithets at work. Id. at ¶ 20. At the meeting, Melton said, "this is not like the 'good old days,'" when such epithets could be said without repercussion. Id. Melton warned, "do not use the N-word or they will go to HR." Id. at ¶ 21.

Vega alleges he endured increased hostility and discriminatory animus at work in the weeks thereafter. Id. at ¶ 23. He says his supervisors inconsistently enforced safety regulations, requiring Vega—but not his Caucasian co-workers—to wear a life jacket. Id. at ¶¶ 23–24. On or about June 19, 2018, Melton allegedly singled out Vega and an African American co-worker for a minor imperfection in their work. Id. at ¶ 26. Melton reportedly "cuss[ed] at them,"

2

admonished them beyond useful and constructive criticism, and sent them home early. Id. at ¶¶ 27–29. The next day, Melton requested that V&G transfer Vega to a different crew to "prevent hostility" toward Vega. Id. at ¶ 30. Vega alleges that, as part of that crew, he was forced to work half an hour later than his Caucasian co-workers. Id. at ¶¶ 31–33.

On or about July 15, 2018, Vega submitted a second signed complaint to HR "detailing the continued hostile work environment, discrimination, and retaliation he faced due to his race, national origin, and participation in protected activity." Id. at ¶ 34.

The hostility continued. On or about July 26, 2018, the Virginia Department of Transportation ("VDOT") subjected Vega's work crew to drug testing. Id. at ¶ 35. Jerry Meek, a supervisor, alluded to the crew that a complaint from Vega prompted VDOT to test their crew. Id. at ¶¶ 36–37. In reality, a VDOT inspector filed the complaint. Id. at ¶ 37. Vega believed that the false accusation was retaliatory and became fearful that his co-workers would physically harm him. Id. at ¶ 38–39. Then, on or about August 28, 2020, Vega alleges that William Gibbs, another supervisor, intentionally attempted to back his truck into Vega. Id. at ¶ 41. Vega was kneeling when Gibbs quickly reversed in his direction. Id. at ¶¶ 40–41. A co-worker shouted for Vega to move out of the way. Id. at ¶ 40. After moving, Vega saw Gibbs smirking behind the wheel. Id. at ¶ 42. Vega reported the incident to Colozzo and another supervisor. Id. at ¶ 43. Colozzo was not present during the incident but dismissed Gibbs's conduct as unintentional and did not discipline him. Id. at ¶ 44.

Vega also alleges he was disciplined for behavior that is considered acceptable from Caucasian employees. On or about September 4, 2018, Vega sent a text message to Gibbs notifying him that he would miss the first five hours of his shift. Id. at ¶ 45. Although this

3

complied with workplace norms, Gibbs issued Vega a written reprimand. Id. at ¶¶ 46, 49. By contrast, V&G did not discipline a Caucasian co-worker for consistent tardiness, including on one occasion when that co-worker was eight hours late for a shift and had failed to notify his supervisors. Id. at ¶ 51.

Vega submitted a third complaint with Colozzo. Id. at ¶ 52. Meek and Gibbs confronted Vega about the complaints later that day and, according to Vega, attempted to intimidate him into quitting his job. Id. at ¶¶ 53–58. Vega alleges that he continued to experience racial discrimination and retaliation throughout the following months. Id. at ¶ 59.

On or about January 23, 2019, Meek informed Vega that another supervisor had made the decision to "lay off" Vega, "seemingly for economic reasons." Id. ¶ 60. Vega alleges that this is pretextual and that V&G terminated him due to discrimination and in retaliation for his complaints about discrimination. Id. at ¶ 8–9, 64. Vega alleges that V&G hired a 25-year-old Caucasian employee in the months leading up to Vega's termination in order to replace him. Id. at ¶ 62. Vega timely commenced this action after exhausting his administrative remedies with the Equal Employment Opportunity Commission. Compl. Ex. A, ECF No. 1-1.

## II.

To survive a motion to dismiss, a plaintiff must plead facts that allow the court to "infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). A plaintiff meets this burden when the complaint "allege[s] facts to satisfy the elements of a cause of action created by [the relevant] statute." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015). The

question before the court is "'not whether [the defendant] will ultimately prevail' . . . but whether [the] complaint was sufficient to cross the federal court's threshold." Woods v. City of Greensboro, 855 F.3d 639, 652–53 (4th Cir. 2017) (quoting Skinner v. Switzer, 562 U.S. 521, 529–30 (2011)). For purposes of a motion to dismiss, the court accepts all pleaded facts in the complaint as true and draws all reasonable inferences in the plaintiff's favor. Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 388 (4th Cir. 2014) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)).

## III.

V&G contends that Vega fails to allege sufficient facts to support his claim that V&G discriminated against him because of his national origin. Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 9. V&G argues that "nearly all of the facts alleged by the Plaintiff allude to discriminatory behavior on the basis of race," but Vega only makes conclusory allegations about discrimination on the basis of national origin. Id. at 4. V&G says these allegations are "threadbare" and "formulaic," and should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Id.

Vega must allege facts to support each element of his claim. McCleary-Evans, 780 F.3d at 584–85. Absent direct evidence of discrimination, the elements of a Title VII discrimination claim are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman, 626 F.3d. at 190. Vega's complaint alleges facts to support each of those elements.

5

As a Puerto Rican person, Vega is a member of a protected class. "National origin," for purposes of Title VII, includes not just the country where a person was born, but, "more broadly, the country from which his or her ancestors came." Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973). The EEOC's meaning of national origin discrimination is even broader, including "the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 CFR § 1606.1. Though Puerto Rico is a United States territory, courts routinely consider Puerto Rican heritage sufficient for membership in a protected class in Title VII claims through the lens of race, national origin, or both. See, e.g., Vergès v. Va. Highlands Cmty. Coll., No. 1:16CV00005, 2016 WL 3024170, at *4 n. 5 (W.D. Va. May 25, 2016) (finding plaintiff, a United States citizen of Puerto Rican descent, satisfied protected class element for purposes of motion to dismiss); Nieves v. CCC Transp., LLC, No. 3:12CV500-HEH, 2012 WL 3880590, at *5 (E.D. Va. Sept. 6, 2012) (denying motion to dismiss because plaintiff, a native of Puerto Rico, demonstrated plausible claim to relief for race and national origin discrimination); Cruz v. Town of S. Boston, Virginia, No. 4:06-CV-00001, 2006 WL 2129357, at * 3 (W.D. Va. 2006) (denying motion to dismiss because pro se plaintiff established his membership in a protected class "[r]egardless of whether [he] referred to himself as Puerto Rican, American, and Hispanic" in his complaint). Therefore, the court finds that Vega has sufficiently alleged his membership within a protected class based on his Puerto Rican descent.

It is true that Vega's complaint does not delineate when he may have been discriminated against based on his national origin as opposed to his race, but that does not

mean his allegations are insufficiently pled. The Fourth Circuit explained in Nnadozie v. Genesis HealthCare Corporation, 730 F.App'x 151, 162 (4th Cir. 2018), that "the same evidence can underlie both a race-based Section 1981 claim and a national-origin-based Title VII claim." This is "because the line between ethnicity and national origin is…'not a bright one,'" so "materials showing that [the plaintiff] was discriminated against for being 'African' can fairly support either claim." Id. at 162–63. Here, Vega's identities as Latino and Puerto Rican are sufficiently intertwined for him to allege discrimination on the basis of race, national origin, or both.

The Fourth Circuit has previously declined to decide whether "discrimination against Latinos is discrimination on the basis of race, national origin, or both" under the Fair Housing Act, finding it sufficient to say Latinos are a protected class without spelling out the specific basis. Reyes v. Waples Mobile Home Park Limited Partnership, 903 F.3d 415, 423 n. 3 (4th Cir. 2018); see also Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 614 (1987) (Brennan, J., concurring) ("[I]n the Title VII context, [national origin and ethnicity] overlap as a legal matter."); Vill. Of Freeport v. Barrella, 814 F.3d 594, 606 (2d Cir. 2016) ("Most courts have assumed that Hispanics [and Latinos] constitute a 'protected class' [under Title VII] but without saying whether that protection derives from race or national origin.").[1] Perhaps Vega's two counts would be better pled as one count of Title VII discrimination on the basis of race, national origin, or both, but the court will not find that the form of his complaint defeats its substance when he has sufficiently alleged facts to support a discrimination claim on either

---

[1] See also id. at 604 n. 21 (describing "Hispanic" versus "Latino" identities and explaining the Second Circuit's decision to use the term "Hispanic" to cover both for the purposes of its opinion).

basis, or perhaps both. Put differently, "Counts [One] and [Three]…amount to separate theories of liability in bringing a single Title VII…discrimination cause of action." Sarco v. 5 Star Fin., LLC, 5:19CV86, 2020 WL 5507534, at *6 (W.D. Va. Sept. 11, 2020).

Vega has also sufficiently alleged the other three elements of a discrimination claim. He alleges he performed his job in a satisfactory manner. ECF No. 1 at ¶ 9. Though V&G disciplined him for his job performance at least twice, Vega alleges the discipline was unfair and part of the discrimination against him. Because the court accepts his pleaded facts as true and construes them in his favor at this stage, the court finds that Vega has alleged satisfactory job performance. Balt. City State's Att'ys Off., 767 F.3d at 388. Vega also clearly suffered an adverse employment action when V&G terminated him. Ultimate decisions, like the termination alleged here, constitute adverse employment actions. Boone v. Goldin, 178 F.3d 253, 255–56 (4th Cir. 1999) (citing Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981)). Vega also satisfies the fourth element of his claim because he describes several instances in which V&G treated Vega differently from similarly situated Caucasian employees outside of the protected class.

To be clear, Vega has not yet proven that he was discriminated against on the basis of race or national origin, but he is not required to do so to survive a motion to dismiss. The court finds that he has "alleged sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Woods, 855 F.3d at 653 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## IV.

V&G also asks the court to dismiss Vega's "national origin retaliation" claim in Count Four because of the lack of facts alleged regarding his Puerto Rican origin. Alternatively, V&G argues that Count Four should be dismissed because it is duplicative of Vega's claim for "race retaliation," Count Two. ECF No. 9 at 5–7. V&G contends that, because the protected activity allegedly subject to retaliation is the same for both counts, one claim must be dismissed. Id. at 7. Otherwise, V&G would be held "doubly liable for a single alleged action." Id. In opposition, Vega argues that his separately-pled "race retaliation" and "national origin retaliation" claims are appropriate because "racial discrimination and national origin discrimination are highly analogous and can be considered simultaneously." ECF No. 17 at 7 (quoting Apau v. Printpack Inc., 722 F. Supp. 2d 489, 493 (D. Del. 2010)).[2] Regardless of whether Count Four is sufficiently pled for purposes of Rule 12(b)(6), the court agrees that Vega's retaliation claims are based on the same protected conduct, are detached from his protected characteristics, and thus improperly duplicative. Unlike Counts One and Three, the form of Counts Two and Four inaccurately reflects the substance of those claims and one should be dismissed. Accordingly, the court will dismiss Count Four.

"To establish a prima facie claim of retaliation, a plaintiff must show: (1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him and (3) there is a causal connection between the protected activity and the adverse action." Perkins v. Intl. Paper Co., 936 F.3d 196, 213 (4th Cir. 2019) (citations omitted).

---

[2] Vega cites Apau, 722 F. Supp. 2d at 494–95, in support of his second retaliation claim and, indeed, his claims are pled very similarly to Apau's. Apau pleaded two retaliation claims for complaints about race and national origin discrimination. Id. at 494. But the court did not address whether it was appropriate to have two separate counts because it found that both were deficient for other reasons.

A plaintiff need not demonstrate any connection between the alleged retaliatory acts and his own national origin, race, or other protected class. Wilcox, 970 F.3d at 460 ("Retaliation for reporting alleged . . . discrimination imposes negative consequences on an employee because of the employee's report, not because of the employee's [protected characteristic]."); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 91 (2d Cir. 2015) (finding that the district court "erred in concluding that, for a retaliation claim, a plaintiff needs to demonstrate a connection between the alleged retaliatory acts and his ethnicity"). This is because, in contrast to a discrimination claim, the "necessary causal link is between the employee's complaint and the adverse action, not between [the protected characteristic] and the adverse action." Wilcox, 970 F.3d at 460 (citing Wetzel v. Glen St. Andrew Living Cmty., LLC, 901 F.3d 856, 868 (7th Cir. 2018)); see also Hempstead Union Free Sch. Dist., 801 F.3d at 91 ("Retaliation occurs when an employer takes action against an employee not because of his ethnicity, but because he engaged in protected activity—complaining about or otherwise opposing discrimination."). Therefore, the plaintiff's protected characteristic "is irrelevant, because it is not the [protected characteristic] that motivated the employer's retaliatory adverse action." Wilcox, 970 F.3d at 460.

Using identical language, Vega alleges in both Count Two and Count Four that he was retaliated against for engaging in a protected activity—"complaining about his discriminatory work environment"—and "unfairly terminated from employment in direct retaliation for his complaints about workplace discrimination." ECF No. 1 at ¶¶ 88–89, 114–15; see also Wilcox v. Lyons, 970 F.3d 452, 460 (4th Cir. 2020) (explaining that a Title VII retaliation requires a showing that the plaintiff "engaged in a protected activity, which includes complaining to her

10

superior about . . . discrimination or harassment"). As outlined in Part III of this opinion, the court agrees with Vega that "racial discrimination and national origin discrimination are highly analogous and can be considered simultaneously," but that reasoning supports simultaneous or alternative pleadings for <u>discrimination</u> claims—not <u>retaliation</u> claims, which do not hinge on Vega's protected characteristics at all. ECF No. 17 at 7. They hinge on the protected activity. Vega's allegations about his Latino and Puerto Rican identities are irrelevant to his retaliation claims and the sufficiency of his complaint is not aided by labeling Counts Two and Four as "race retaliation" and "national origin retaliation," respectively.

For these reasons, Vega cannot maintain two retaliation claims based on the same protected activity by anchoring them to his different protected characteristics and the court will dismiss Count Four as duplicative of Count Two.[3]

## V.

For these reasons, the court will **DENY in part** the motion to dismiss as to Count Three, as it is sufficiently pled, and the court will **GRANT in part** the motion to dismiss as to Count Four, as it is duplicative of Count Two.

An appropriate order will be entered.

Entered: December 17, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.12.17 15:17:42
-05'00'

Michael F. Urbanski
Chief United States District Judge

---

[3] This leaves Vega with his "race retaliation" claim. If Vega wish to amend Count Two to reflect that his protected activity concerned discrimination on the basis of both race and national origin, he may request to do so.